IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3309-FL

| | | |
|---|---|---|
| TIMOTHY A. HONEA,<br><br>Plaintiff,<br><br>v.<br><br>SERGEANT OATS, MS. BARNES, JAMEL JAMES, SHANQUITA T. NICHOLAS, JOHN K. RAYMOND, and GEORGE SHARPE,<br><br>Defendants. | ) | ORDER |

The matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 37). The motion has been briefed fully and in this posture the issues raised are ripe for ruling.

**BACKGROUND**

Plaintiff, a former pretrial detainee proceeding pro se, commenced this action by filing complaint pursuant to 42 U.S.C. § 1983, alleging claims for violations of his civil rights under the Fourteenth Amendment to the United States Constitution. Following initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the court allowed plaintiff to proceed with the following claims against defendants in their individual capacities: defendants Ms. Barnes ("Barnes") and Jamel James ("James"), the Warden Central Prison, denied him visitation with two of his family members; defendant Sergeant Oats ("Oats") denied him the ability to purchase earphones; and defendants Shanquita T. Nicholas ("Nicholas"), John K. Raymond ("Raymond"),

and George Sharpe ("Sharpe")[1] refused to provide him condiments such as salt, pepper, sweetener, or creamer.

Following a period of discovery, and in accordance with the court's case management order, defendants filed the instant motion for summary judgment. Defendants argue plaintiff's claim regarding the provision of condiments fails on the merits because plaintiff does not possess a liberty interest in condiments, and that plaintiff failed to exhaust administrative remedies for his remaining claims.[2] Defendants also argue they are entitled to qualified immunity. In support of the motion, defendants rely upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) affidavit of Kimberly Grande, the executive director of the North Carolina Department of Adult Correction's ("DAC") Inmate Grievance Resolution Board; 2) plaintiff's administrative grievance records; 3) defendant Sharpe's personal declaration, 4) the DAC's safekeeper policy; 5) the DAC's offender access to telephone and tablets policy; 6) the DAC's food and nutrition management policy; 7) plaintiff's offender public information page; and 8) plaintiff's safekeeping order.

Plaintiff responded to defendants' motion and filed a pleading captioned "Motion to Deny Defendants['] Motion for Summary Judgment," which the court construed as a request to deny or defer ruling on defendants' motion for summary judgment pending further discovery pursuant to Federal Rule of Civil Procedure 56(d). Defendants then filed a reply in further support of their motion for summary judgment. See (DE 52).

Ultimately, the court denied plaintiff's Rule 56(d) motion. In ruling on this motion, the court noted the parties were provided almost four months for discovery and that defendants had

[1] On July 22, 2024, the North Carolina Attorney General filed a waiver of service informing the court that the defendant plaintiff originally identified as the John Doe Kitchen Manager is George Sharpe. See (DE 18).
[2] Defendants also argued plaintiff's action should be dismissed for failure to prosecute, but now concede that the issue is moot. See ((DE 52), p. 1)

recently re-sent plaintiff copies of their discovery responses after learning that plaintiff's personal property had been confiscated while he was incarcerated at Craven Correctional Institution. Finally, the court allowed plaintiff to file supplemental response to defendants' pending motion for summary judgment.

Plaintiff filed an untimely supplemental response to defendants' motion for summary judgment. In his supplemental response, plaintiff asserts several new claims that hte court addresses below.

On September 18, 2026, defendants filed a supplemental reply to their motion for summary judgment. Defendants attached to their filing of a copy of the DAC's current administrative remedy procedure ("ARP") policy, effective October 1, 2023, and a copy of the DAC's prior ARP policy, effective August 1, 2013.

## DISCUSSION

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[3]

[3] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is “ material” only if it might affect the outcome of the suit and “genuine” only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). “[A]t the summary judgment stage the [court’s] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.” Id. at 249. In determining whether there is a genuine issue for trial, “evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant’s] favor.” Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (“On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.”).

Nevertheless, “permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.” Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where “the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture.” Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when “the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created,” and judgment as a matter of law should be denied. Id. at 489–90.

B. Analysis

1. Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that plaintiff failed to exhaust administrative remedies as to claims alleging defendants denied him visitation and denied him the ability to purchase earphones. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is mandatory. Woodford, 548 U.S. at 84; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). A prisoner must exhaust administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). Administrative grievances must contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]." Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quotation omitted); Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).

Administrative exhaustion is "defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007). And the PLRA mandates "proper exhaustion" meaning "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement. Woodford, 548 U.S. at 83, 90. Thus, an inmate has not exhausted administrative remedies unless he receives a decision "on the merits" of his grievance and complies with all procedural requirements for appealing the result. See id. at 90.

The DAC's ARP prescribes a three-step procedure that inmates must complete to exhaust administrative remedies. (See Grande Decl. (DE 40-1) at 1– 2); see also Moore, 517 F.3d at 721 (describing policy). The inmate initiates the procedure by submitting written grievance on form DC-410 to designated facility staff. ("step one"). (Grande Decl. (DE 40-1) at 2). If the inmate is not satisfied with the decision reached at the step-one level, he may appeal the decision to facility management ("step two"). (Id.). If the inmate is not satisfied with the decision reached by the facility head, he may appeal to the inmate grievance examiner ("step three"). (Id.). The decision by the inmate grievance examiner is the final step of the procedure. (Id.).

Inmates are not required to exhaust administrative remedies if the correctional institution's procedure is "unavailable." See Ross v. Blake, 578 U.S. 632, 642–44 (2016). An administrative remedy procedure is unavailable if the "procedure's provided avenues for recourse are not meaningfully 'capable of use to obtain some relief for the actions complained of.'" Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022) (quoting Ross, 578 U.S. at 642–43). The Supreme Court has identified three non-exclusive circumstances where an administrative remedy procedure is unavailable: 1) where the procedure "operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 642–44; Griffin, 56 F.4th at 335.

Regarding his visitation claim, the record reflects plaintiff filed a grievance related to this claim on August 24, 2023, but the grievance was rejected on August 28, 2023, because plaintiff had an "active grievance in process." (See DE 40-14 at 12–13). Plaintiff contends prison officials wrongfully rejected his grievance because the DAC, Policy & Procedure Manual, Subchapter G,

§ .0304(c) provides: "Offenders may submit up to three grievances regarding separate incidents. After an offender has three grievances pending, at any level of review, the offender may only submit a fourth grievance after a pending grievance has completed Step 2 review or has been resolved." DAC, Policy & Procedure Manual, Subchapter G, § .0304(c) (effective Oct. 1, 2023); (DE 64-2). However, the version of § .0304 cited by plaintiff became effective on October 1, 2023, and was not in effect when plaintiff filed his grievance on August 24, 2023. Rather, the version of § .0304 in effect when plaintiff filed his grievance provided: "An inmate may submit a new grievance after a pending grievance has completed Step 2 review or has been resolved." DAC, Policy & Procedure Manual, Subchapter G, § .0304(b) (effective Aug. 1, 2013); (DE 64-1). Thus, the rejection of plaintiff's August 24, 2023, grievance did not violate the DAC's policies and procedures.

Plaintiff, additionally, contends he appealed his August 24, 2023, grievance, but that his appeal was never answered. Plaintiff further states in his sworn declaration that he filed four grievances and three letters regarding the visitation issue, and only his August 24, 2023, grievance was answered. (See DE 63-1 at 1). In his complaint, plaintiff specifies that he filed grievances regarding the visitation issue on August 10, 2023, August 24, 2023, and September 8, 2023.[4] (See DE 1 ¶¶ 17, 18, 22). In support of his contention that he filed additional grievances regarding the visitation issue, plaintiff points to his August 24, 2023, grievance in which he stated, "[t]his is my second grievance I've wrote and I also wrote a letter about this issue." (DE 40-14 at 12). Finally, plaintiff states in his sworn declaration that his evidence was confiscated by "NCDAC personnel and mailed to [his] wife[,]" but that he "cannot gain access to it." (DE 63-1 at 1). Based upon the foregoing, there is a genuine issue of material fact with regard to whether the ARP was available

[4] Defendants acknowledge that a grievance regarding plaintiff's visitation claim filed on September 8, 2023, would have been timely filed. See ((DE 64), p. 3).

to plaintiff for his visitation claim. Ross, 578 U.S. at 642–44; Griffin, 56 F.4th at 335. Thus, defendants' motion for summary judgment is DENIED as to this claim.

With respect to plaintiff's claim regarding the inability to purchase earphones, plaintiff makes the conclusory allegation in his declaration that he "filed 4 grievances regarding sergeant Oat[']s actions," but none of the grievances were answered. (See DE 63 at 8; DE 63-1 at 2). Plaintiff asserts he had copies of the grievances, but that they "were taken and [he has] not been able to recover them." (DE 63-1 at 2). Plaintiff, however, provides no further detail about any alleged prior grievances regarding his inability to purchase earphones, or any prison official's alleged refusal to reply to his grievances regarding this issue. For example, he does not describe with any particularity what was alleged in the grievances. He does not identify who he submitted the grievance to or describe the circumstances under which officials refused to process it. Nor does he provide any contemporaneous documentary evidence showing the reasons DAC officials refused to process the grievance.

In these circumstances, plaintiff's conclusory assertions that prison officials refused to process his grievances regarding the earphone issue cannot create a genuine dispute of material fact on the issue of availability of the ARP. See Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (explaining "unsubstantiated allegations and bald assertions" cannot defeat a motion for summary judgment). And this rule is especially relevant here, where between April 1, 2023, and December 2, 2024, plaintiff filed and exhausted seven distinct grievances, including one in which he alleged he was denied condiments. (DE 40-1 ¶¶ 10-11; DE 40-14 at 14-17; DE 40-2 through DE 40-8).

Given this record, and the fact that defendants allowed plaintiff to exhaust a separate grievance regarding his alleged deprivation of condiments, plaintiff must come forward with more than conclusory assertions that defendants refused to process his grievance to establish administrative remedies were not available for this claim. See Ross, 578 U.S. at 642– 44; Wai Man Tom, 980 F.3d at 1037; Evans, 80 F.3d at 960; see also Hill v. Haynes, 380 F. App'x 268, 273 (4th Cir. 2010) (finding genuine issues of material fact as to availability of administrative remedies where plaintiff provided specific and detailed evidence regarding defendants' interference with his ability to exhaust). Thus, defendants' motion for summary judgment is GRANTED as to plaintiff's claim that he was not permitted to purchase earphones, and this claim is dismissed without prejudice.

2. Deprivation of Condiments

Plaintiff alleges that each meal at Central Prison was served with no condiments, making "every meal almost inedible." ((DE 1) ¶¶ 66-68). Because plaintiff was a pretrial detainee during the relevant time, his claim is evaluated under the Fourteenth Amendment to the United States Constitution. Bell v. Wolfish, 441 U.S. 520, 535–38 (1979). In this context, a pretrial detainee must show that the challenged government action is not "rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose." See Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). For claims challenging conditions of confinement, the inmate mush establish:

> (1) [that a condition of confinement] posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the [condition existed] and (b) that the defendant' s action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Id.

Mere negligence is insufficient to establish a claim under this standard. Id. Instead, the plaintiff must show "the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should have been known." Id.; see also Farmer v. Brennan, 511 U.S. 825, 836 (1994).

Plaintiff contends he has a liberty interest in receiving condiments with his prison meals. To establish a state-created liberty interest, a prisoner must establish: "(1) that there is a state statute, regulation, or policy that creates such a liberty interest, and (2) that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Shaw v. Foreman, 59 F.4th 121, 127 (4th Cir. 2023) (citation omitted). Here, plaintiff cites the North Carolina Administrative Code 10A NC ADC 14J.0902(a),(b), which provides as follows:

> (a)Each jail shall provide at least three meals for inmates, two of which must be hot, at regular times during each 24-hour period. There shall be not more than 14 hours between the evening meal and breakfast.
>
> (b) Food shall be served to inmates on individual serving trays. Eating utensils, consistent with security considerations, and condiments shall be provided.

Id. A jail is defined as follows: "[A] building or part of a building operated by a county or group of counties for the confinement of inmates that includes county jails and district confinement facilities[.]" 10A NC ADC 14J.0101(31).

Here, plaintiff was incarcerated as a safekeeper at Central Prison during the relevant time. Central Prison is not a jail covered by the administrative regulation cited by plaintiff. See 10A NC ADC 14J.0101(31); (see also DE 40-9 ¶ 4). Thus, the administrative regulation cited by plaintiff is inapplicable to plaintiff's claim. Based upon the foregoing, plaintiff has not identified any state

statute, regulation, or policy which creates a liberty interest in receiving condiments while incarcerated at a prison operated by the DAC. See Shaw, 59 F.4th at 127.

The alleged deprivation of condiments also does not impose an atypical and significant hardship particularly where prisoners do not have a constitutional right to condiments. See Shaw 59 F.4th at 127 (stating standard); see also Caldwell v. Cabarrus County Jail, No. 1:12CV586, 2012 WL 2366451, at *2 (M.D.N.C. June 21, 2012) ("Neither condiments, non-powdered milk, large portions of food, nor tray covers are basic human necessities."), adopting report and recommendation, 2013 WL 1344452 (M.D.N.C. Apr. 2, 2013). Moreover, the United States Constitution does not guarantee food that is prepared and served in a manner preferred by the inmate. See Scinto v. Stansberry, 841 F.3d 219, 233 (4th Cir. 2016); see also La Maire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). Based upon the foregoing, defendants' motion for summary judgment is GRANTED as to this claim.

To the extent defendants moved for summary judgment as to plaintiff's visitation claim against defendant James for lack of personal involvement, plaintiff alleges he wrote a letter and spoke to James regarding the visitation issue but the problem still was not fixed. See ((DE 1) ¶¶ 19, 21). The court finds plaintiff has alleged sufficient personal involvement for defendant James and defendants' motion for summary judgment as to this issue is DENIED.

3. New Claims

As noted above, plaintiff alleged a number of new, distinct claims in his supplemental response to defendants' motion for summary judgment. Plaintiff, however, cannot amend his pleadings by asserting new claims in response to a motion for summary judgment. See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175,

184 (4th Cir. 2013). The court therefore will not consider plaintiff's new claims asserted for the first time in his response brief.[5] Finally, plaintiff concedes that his requests for injunctive relief now are moot because he no longer is incarcerated at Central Prison. (See (DE 63) at 13).

**CONCLUSION**

In summary, defendants' motion for summary judgment (DE 37) is GRANTED in part and DENIED in part. Defendants' motion is GRANTED as to plaintiff's claims regarding his alleged inability to purchase earphones and denial of condiments. Plaintiff's claim regarding the alleged inability to purchase earphones is DISMISSED without prejudice. Defendants' motion is DENIED as to plaintiff's visitation claim. Plaintiff's requests for injunctive relief are DENIED as MOOT. The court will address qualified immunity on a more fully developed record. The parties have until December 1, 2026, to file dispositive motions addressing the merits of plaintiff's remaining claim.

SO ORDERED, this the 25th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge

[5] Plaintiff, of course, may pursue these claims in a new civil rights action, and he may request the appropriate forms for filing a new case by writing to the clerk's office.